**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEL DURMER, | Civil Action No. 16-3022 (ES) (MAH) |
| Plaintiff, | |
| v. | OPINION |
| GARY LANIGAN, et al., | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court are two motions to dismiss filed by Defendants James Slaughter and Sherry Yates (D.E. No. 22), and Merrill Main and Elizabeth Connolly (D.E. No. 42), (collectively "Defendants"). Also before the Court is Joel Durmer's ("Plaintiff") application to appoint *pro bono* counsel. (D.E. No. 1-2).[1] The Court has considered the parties' submissions and decides these matters without oral arguments under Federal Rule of Civil Procedure 78(b). For the following reasons, the Court GRANTS Defendants' motions to dismiss and DENIES Plaintiff's request to appoint *pro bono* counsel.

**I.    Background**

Plaintiff, presently confined pursuant to the Sexually Violent Predator Act ("SVPA"),[2] N.J.

---

[1]    Plaintiff also filed a "motion to supplement the record" in response to the Courts February 9, 2018 Order. (D.E. No. 47). In light of Plaintiff's *pro se* status, the Court grants this request and has considered Plaintiff's relevant submissions in deciding Defendants' motions to dismiss. *See Capogrosso v. The Supreme Court of New Jersey,* 588 F.3d 180, 184 n. 1 (3d Cir.2009) ("[W]e remain mindful of our obligation to construe a *pro se* litigant's pleadings liberally.").

[2]    Defendants assert that Plaintiff is involuntarily committed to New Jersey's Special Treatment Unit ("STU") because "he has been found by a court to be a sexually violent predator." (D.E. No. 42 at 5). Plaintiff disputes this, arguing that he is not involuntarily committed and he has not been found to be a sexually violent predator, "but [is] merely pending a hearing to determine if such commitment is warranted." (D.E. No. 47-2 at 3). The Court need not

Stat. Ann. § 30:4-27.24, filed the instant matter pursuant to 42 U.S.C. § 1983 on May 25, 2016. (D.E. No. 1). After screening the Complaint, the Court permitted Plaintiff's visitation-related claim against Defendants Slaughter, Yates, Main, and Connolly to proceed. (D.E. No. 13 at 3). The sole claim remaining involves Plaintiff's allegations that the STU's restriction on Plaintiff's visitation privileges with his minor grandson violated his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments constitutional rights.[3] (D.E No. 1 at 8, 13-14). In his Complaint, Plaintiff alleges that he was allowed visits with his grandchild when he was at "A.D.T.C.",[4] but since being placed at the STU he has been denied visits with the child. (*Id.* at 12-13).

## II. Legal Standard

### A. Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. *New Jersey Carpenters and the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-

---

resolve this apparent dispute, however, because both parties agree that Plaintiff is presently confined at the STU pursuant to New Jersey's SVPA. (*See* D.E. No. 1 at 2; D.E. No. 42 at 6).

[3] Plaintiff made several other claims that were dismissed at the screening stage. (D.E. No. 13). He does not specify which alleged act by the STU implicates the listed constitutional rights. (*See id.*). Defendants Connolly and Main's motion to dismiss addresses how the visitation issue does not implicate any of the aforementioned constitutional rights. (*See* D.E. No. 42).

[4] While Plaintiff does not explain what "A.D.T.C" is, the Court presumes that this is a reference to New Jersey's Adult Diagnostic and Treatment Center for convicted sex offenders. *See Salerno v. Corzine*, Nos. 06-3547, 07-2751, 2013 WL 5505741 *10 (D.N.J. Oct. 1, 2013).

2

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

**B.     Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Claims protesting the conditions of confinement arise under the due process clause of the Fourteenth Amendment for civil detainees, such as Plaintiff, that are committed to a state facility. *See Youngberg v. Romeo*, 457 U.S. 307, 312 (1982).

3

## III. Analysis

Defendants Connolly and Main assert that Plaintiff has failed to state a claim for which relief can be granted because his Complaint does not properly allege that any of his constitutional rights were violated.[5] (D.E. No. 47 at 18-34). Because the Court finds this argument dispositive as to all the claims against all Defendants, the Court does not reach the Defendants' other arguments.

### A. Failure to State a Claim

#### i. First Amendment violation

Defendants Connolly and Main advance the argument that Plaintiff has failed to allege a *prima facie* case of a First Amendment violation. (D.E. No. 42 at 19-23). The Court agrees that Plaintiff has not alleged a First Amendment claim.

It is well-settled that inmates do not lose certain constitutional protections by virtue of their confinement. *Turner v. Safely*, 482 U.S. 78, 88 (1987). Nonetheless, those protections must be balanced with the institution's "legitimate penological interests." *Id.* Among these rights, inmates retain a First Amendment right of association, albeit a very limited one. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("[F]reedom of association is among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context."). Similar to the circumstances in this matter, *Overton* assessed the First, Eighth, and Fourteenth Amendment claims of a class of inmates who were subject to various visitation restrictions, including a prohibition from receiving visits from minor nieces and nephews. *Id.* at 133-34. The

---

[5] Defendants Connolly and Main also address an Equal Protection Clause claim. (D.E. No. 42 at 33-34). Plaintiff does not allege he is a member of a protected class as required by the Equal Protection Clause. However even if this Court were to construe his claim as a "class of one" theory, he has not alleged that he has been "intentionally treated differently from other similarly situated" individuals as required to plead an Equal Protection Clause violation. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

4

*Overton* Court articulated that courts confronted with a prisoner's claim alleging that a regulation violates a constitutional right must apply the four-factor test articulated in *Turner*. *Id.* at 132. First, "the regulation must have a 'valid, rational connection' to a legitimate governmental interest; [second], whether alternative means are open to inmates who exercise the asserted right; [third], what impact an accommodation of the right would have on guards and inmates and prison resources, [finally], whether there are 'ready alternatives' to the regulation." *Id.* (quoting *Turner*, 482 U.S. at 89-91, 107).

Applying the *Turner* factors to this case, the legitimate governmental interest in denying Plaintiff visits with his grandchild undermines his First Amendment claim. Plaintiff provides that the STU personnel indicated something to the effect that the child "might fit a victim profile." (D.E. No. 1 at 14). Given that Plaintiff was housed in a facility designated for sex offenders, deference must be afforded "to the professional judgement of the prison administrators." *Overton*, 539 U.S. at 132; *see also id.* at 135 ("[p]rotecting children from harm is also a legitimate goal."). The STU has a legitimate interest in ensuring visitors' safety as well as promoting their residents' rehabilitation. *See Waterman v. Farmer*, 183 F.3d 208, 215 (3d Cir. 1999) (noting, within the context of sex offenders who were prohibited from accessing pornographic material, that "it is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders").

With respect to the second *Turner* factor, whether alternative means exist for Plaintiff to exercise this right, Plaintiff has not alleged that no other means exist. Plaintiff has not indicated that he is prohibited from receiving visits from other family members, which includes the parents of the child in question. *See Pell v. Procunier*, 417 U.S. 817, 825 (1974); *see also Overton*, 539 U.S. at 135 (holding that an inmate's ability to communicate with those prohibited from visiting

5

by sending messages through those who may visit is an alternative means of associating). Moreover, Plaintiff has not alleged a restriction on communicating with the grandchild via other forms of communication, including telephone and written correspondence. *See LeCompte v. Ricci*, Civil No. 11-1639, 2011 WL 6130596, *11 (D.N.J. Dec. 7, 2011) (determining that Plaintiff could not meet the second *Turner* factor because Plaintiff had the ability to maintain "ties with his mother through written correspondence and telephone calls").

Turning to the third *Turner* factor, Plaintiff has not alleged how accommodating his desire to visit with his minor grandchild would not impair the ability of prison officials to protect child visitors to the facility. This particular *Turner* factor, similar to the first factor, underscores the importance of the deference due to the facility's judgment in regulating such an institution.

Finally, Plaintiff's allegations fail to provide any "ready alternatives" to the prohibition on the child visitor. *See Rivera v. Rogers*, 224 F. App'x 148, 151 (3d Cir. 2007) ("[W]e find no error in the District Court's conclusion that there are no ready alternatives and the current policy appears to be the only viable alternative, thus further supporting the reasonableness of STU's policy.")

Accordingly, Plaintiff has not stated a valid First Amendment free association claim as to any Defendants.

### ii. Fourth Amendment violation

Plaintiff also asserts that the restriction on his ability to receive visits from his grandchild violates his Fourth Amendment rights. (D.E. No. 1 at 7). Defendants argue that Plaintiff has not alleged that an improper search or seizure occurred. (D.E. No. 42 at 24).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the

nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 618 (1988) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)).

Here, Plaintiff does not specify what in particular about the visitation prohibition implicates the Fourth Amendment. Plaintiff provides nothing to support that an unreasonable search and or seizure has occurred. Consequently, Plaintiff has failed to state a valid Fourth Amendment claim against any Defendants.

### iii. Fifth Amendment violation

Plaintiff also alleges that the visitation restriction violates his Fifth Amendment right against self-incrimination.[6] "The Fifth Amendment prevents a state from compelling a person to incriminate himself or herself." *Renchenski v. Williams*, 662 F.3d 315, 332 (3d Cir. 2010). Defendants argue that Plaintiff's visitation claim "has nothing to do with the self-incrimination clause." (D.E. No. 42 at 25). This Court agrees that Plaintiff has not alleged what, if anything, resulted in any self-incrimination or even potential for self-incrimination. Therefore, Plaintiff has not made a valid Fifth Amendment claim against any Defendants.

### iv. Sixth Amendment violation

Plaintiff alleges that the visitation restriction implicates his Sixth Amendment rights. (D.E. No. 1 at 7). Plaintiff does not specify what about the restriction violates the Sixth Amendment.

The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in

---

[6] To the extent Plaintiff is raising a due process claim under the Fifth Amendment, that claim also fails because the Fifth Amendment applies only to acts of the Federal government and not to conduct by states, state agencies, or state officials. *See Bergdoll v. City of York,* 515 F. App'x 165, 170 (3d Cir.2013) (citing *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir.1983)).

7

his favor, and to have the assistance of counsel for his defense.

U.S. Const. amend. VI.

Plaintiff's Complaint does not present any allegations that could be construe as raising an issue within the purview of the Sixth Amendment. Consequently, Plaintiff has failed to state a Sixth Amendment claim.

### v. Eighth Amendment violation

Plaintiff also alleges that the visitation restriction was in violation of the Eighth Amendment's proscription on cruel and unusual punishment. (D.E. No. 1 at 7). In order to prevail, Plaintiff would have to show that the visitation prohibition "violates civilized standards of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992). Importantly, "visitation with a particular person does not constitute a basic necessity, the denial of which would violate the Eighth Amendment." *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004). Therefore, based on the allegations of the Complaint, Plaintiff has failed to state an Eighth Amendment claim.

### vi. Fourteenth Amendment violation

Finally, Plaintiff attempts to assert a Fourteenth Amendment violation. (D.E. No. 1 at 7 & 18). Plaintiff alleges, that "[Plaintiff] has not seen his grandson in three years because DHS 'believes' the visit to be inappropriate and 'feels' the visit to be wrong, thereby interfering in the visitation without providing a foundation for their refusal. Yet they refuse to provide the statutes, regulations and internal management policies that they believe justifies their actions." (*Id.* at 18). Plaintiff does not identify whether he is alleging a procedural or substantive due process violation. This Court will consider whether Plaintiff has established a claim under either the Due Process Clause's proscription on his substantive rights or procedural rights.

The Due Process Clause of the Fourteenth Amendment prohibits state action that "deprives any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To allege a violation of one's due process rights, a plaintiff must establish that he was deprived of an interest cognizable under the Due Process Clause, and that the procedures attendant upon that deprivation were not constitutionally sufficient. *Kentucky v. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989).

### 1. Substantive Due Process

To maintain a substantive due process claim, Plaintiff must establish that he was deprived of a particular interest that "is protected by the substantive due process clause." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). In 1983 cases, "the Supreme Court has used three different approaches to determine whether a person's due process rights under the Constitution have been violated: (1) analysis of fundamental rights accorded by substantive due process; (2) analysis of due process rights under *Youngberg v. Romero*[,457 U.S. 307 (1982)] (the 'professional judgment' standard); and (3) analysis of due process rights under *Nicini v. Morra*[, 212 F.3d 798 (3d Cir. 2000)] (the 'shocks the conscience' standard)." *Brandt v. Delbene*, No. 05-1524, 2006 WL 776797, at *2 (D.N.J. Mar. 27, 2006).

Here, Plaintiff's Complaint fails to meet any of these approaches. First, Plaintiff has not alleged a fundamental right protected by the due process clause. According to Plaintiff's Complaint, the visits with his grandson were prohibited because the institution considered the child to fit a victim profile. (D.E. No. 1 at 14). However, as this Court has already analyzed in the preceding sections, an inmate's temporary inability to access a particular visitor does not implicate a liberty interest protected by the Constitution. *Thompson,* 490 U.S. at 461(1989) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated

by a prison sentence, and therefore is not independently protected by the Due Process Clause) (citation and internal quotation marks omitted); *Cherry v. McCaughtry*, 49 F. App'x 78 (7th Cir. 2002) ("Likewise, Cherry's temporary inability to visit his fiancée does not implicate a liberty interest[.]"). *See also Rees v. Off. of Child. and Youth*, 744 F. Supp. 2d 434, 452 (W.D. Pa. 2010) (holding that grandmother did not have liberty interest in associating with grandchildren.). Because Plaintiff has not established that a protected liberty interest was at issue, he does not plead a claim for violation of substantive due process.

Second, the "professional judgment" standard provides that professional decision-makers may be liable for a substantive due process violation if the professional's action was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgement." *Youngberg*, 457 U.S. at 323. Moreover, the *Youngberg* Court provided that decisions "if made by a professional [are] presumptively valid." *Id.* Here, Plaintiff has not alleged any facts that would cause this Court to rebut the presumption of correctness of the decision to restrict visits from Plaintiff's grandchild. His complaint provides that the facility's staff issued the decision to prohibit the grandchild and that the decision was based on the grandchild fitting a victim profile. (D.E. No. 1 at 14). Therefore, Plaintiff has not made a valid substantive due process claim under *Youngberg*.

Third, Plaintiff's claims also fail under the "conscience shocking" standard articulated in *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). Under this standard, substantive due process rights have been violated "when there is an executive action that is so ill-conceived or malicious that it shocks the conscience." *See Brandt*, 2006 WL 776797, at *3 (citations and internal quotation marks omitted).

> The action necessary to reach a level that 'shocks the conscience' depends on the circumstances of a particular case. "A plaintiff seeking to establish a constitutional violation must demonstrate that the official's conduct 'shocks the conscience' in the particular setting in which that conduct occurred." The standard the court uses to determine whether an action has reached that level is the "deliberate indifference standard." Failure to perform a specific duty, "in light of an actually known risk," could amount to deliberate indifference.

*Id.* (citations omitted). Here, Plaintiff has not alleged any facts that support deliberate indifference on the Defendants' part, particularly in light of this Court's earlier discussion that Plaintiff did not have a protected liberty interest have receive visits with his grandchild. Therefore, Plaintiff has not pleaded sufficient facts to show that Defendants' conduct would "shock the conscience." *See id.* at 4.

### 2. Procedural Due Process

Finally, to the extent that Plaintiff is alleging a procedural due process violation, Defendants submit that an internal administrative grievance process was available to Plaintiff. (D.E. No. 42 at 29-31). The failure to exhaust these administrative remedies is an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) ("[D]efendants must plead and prove failure to exhaust as an affirmative defense.")

Here, Plaintiff has not alleged that he has exhausted the available administrative remedies. (*See* D.E. No. 1). But more importantly, Plaintiff's failure to raise a valid substantive due process claim forecloses any potential procedural due process arguments. *See Musila v. Lock Haven Univ.*, 970 F. Supp. 2d 384, 392 (M.D. Pa. 2013) ("In order to establish that the state has violated an individual's right to procedural due process, a plaintiff must first, demonstrate the existence of a protected interest in life, liberty or property that has been interfered with by the state; and then second, establish that the procedures attendant upon that deprivation were constitutionally

insufficient.") (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972); *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Hewitt v. Helms*, 459 U.S. 460 (1983)).

Therefore, because Plaintiff has failed to establish a protected liberty interest, and even if he had, he has failed to allege that he exhausted the available administrative remedies, Plaintiff has failed to establish a valid Fourteenth Amendment Due Process claim. Accordingly, all of Plaintiff's claims against these four Defendants are dismissed.

### B. Request for *Pro Bono* Counsel

Plaintiff made a request to appoint *pro bono* counsel that accompanied his original complaint. (D.E. No. 1-2). The Court denies the request.

The threshold question when considering such an application is whether "the plaintiff's claim [has] some merit in fact and law." *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citation omitted). Petitioner has raised his indigency, difficulty researching and investigating the matter as a result of his confinement, as well as the complexity of the issues raised in his Complaint as factors supporting his motion. (*See* D.E. No. 1-2). Nonetheless, the Court's dismissal of this case for the reasons already stated in this opinion weighs against the appointment of *pro bono* counsel at this time. *See Carter v. Owens*, No. 17-0182, 2017 WL 3107204, at *15 (D.N.J. July 21, 2017) ("As the Complaint is being dismissed, Plaintiff's request for *pro bono* counsel . . . is denied at this time."); *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (requiring claim to have "some merit in fact and law" before appointing *pro bono* counsel). Therefore, Plaintiff's request to appoint *pro bono* counsel is denied *without prejudice*.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants motions to dismiss for failure to state a claim and dismisses Plaintiff's Complaint *without prejudice*. An appropriate Order

accompanies this Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**